## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **Charles C Elmer,** | * | **DOCKET NO.** |
| **Individually and as Representative** | * | |
| **of Similarly Situated Persons** | * | |
| | * | **Section** |
| **versus** | * | |
| | * | |
| **BP, P.L.C., BP Products North America, Inc.,** | * | |
| **BP America, Inc., BP America Production** | * | |
| **Company, BP Exploration & Production, Inc.,** | * | |
| **Anadarko E&P Company LP, Anadarko** | * | |
| **Petroleum Corporation, MOEX Offshore** | * | **JURY DEMAND** |
| **2007 L.L.C. Halliburton Energy Services, Inc.,** | * | |
| **Cameron International Corporation (f/k/a** | * | |
| **Cooper Cameron Corporation), and, M-I, L.L.C.** | * | |
| * * * * * * * * * * * * * * * * * * * | * | |

## CLASS ACTION COMPLAINT

This Complaint of certain persons named and more specifically referred to herein, and who are of majority age and appear both individually and on behalf of all others similarly-situated, through undersigned counsel respectfully represents that:

1.     This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### I. PARTIES

### A. Plaintiffs

2.     Plaintiff, Charles C. Elmer, is a citizen and domiciliary of the State of Louisiana, Parish of St. Tammany, who owns and/or co-owns real property located in the Parish of Jefferson, Louisiana, including Elmer's Island and approximately 1600 acres north of Elmer's Island, located within the "Coastal Zone," as that term is defined in 43 U.S.C. §1331(e),  and, as a

1

result of the events described herein, has suffered damages that are more fully described below.

3.  Plaintiff, Lena T. Nunez, is a citizen and domiciliary of the State of Louisiana, Parish of St. Bernard, who owns and/or co-owns real property located in the Parishes of St. Bernard and Plaquemines, Louisiana, located within the "Coastal Zone," as that term is defined in 43 U.S.C. §1331(e),  and, as a result of the events described herein, has suffered damages that are more fully described below.

4.  Plaintiff, Darryl Eckert, is a citizen and domiciliary of the State of Louisiana, Parish Orleans, who holds a State-issued saltwater fishing license and who engages in the privilege granted to him by the State of Louisiana pursuant to such license, and, as a result of the events described herein, has suffered damages that are more fully described below.

5.  Plaintiff Frederick Bass is a citizen and domiciliary of the State of Louisiana, Parish of St. Tammany, Louisiana, who earns his livelihood as a commercial fisherman within the coast of the Gulf of Mexico and the "Coastal Zone," as that term is defined in 43 U.S.C. §1331(e), and, as a result of the events described herein, has suffered damages that are more fully described below.

6.  Plaintiff, Rodney Neumeyer, Jr., is a citizen and domiciliary of the State of Louisiana, Parish of St. Bernard, Louisiana, who has been exposed to and adversely affected by the crude oil released as a result of the incident at issue and has, as a result, suffered personal and emotional injuries.

7.  Plaintiff, Michael Hayes, is a citizen and domiciliary of the State of Louisiana, and is the owner of Hayes Seafood & Produce Markets Inc., whose principal offices are located in Lake

Charles, Louisiana, which business is engaged in the retail of fresh seafood within the coast of the Gulf of Mexico and the "Coastal Zone," as that term is defined in 43 U.S.C. §1331(e), and, as a result of the events described herein, has suffered damages that are more fully described below.

## B.  Defendants

8.   Defendant BP, P.L.C., ("BP") a foreign corporation doing business in the State of Louisiana and within this district.

9.   BP Products North America, Inc., ("BP Products") a foreign corporation doing business in the State of Louisiana and within this district.

10.   BP America, Inc., ("BP America") a foreign corporation doing business in the State of Louisiana and within this district.

11.   BP America Production Company, ("BP America Production") a foreign corporation doing business in the State of Louisiana and within this district.

12.   BP Exploration & Production, Inc., ("BP E&P") a foreign corporation doing business in the State of Louisiana and within this district.

13.   Anadarko E&P Company LP, ("Anadarko E&P") a foreign limited partnership doing business in the State of Louisiana and within this district.

14.   Anadarko Petroleum Corporation, ("Anadarko Petroleum") a foreign corporation doing business in the State of Louisiana and within this district.

15.   MOEX Offshore 2007 L.L.C., ("MOEX") a foreign limited liability company doing business in the State of Louisiana and within this district.

16.   Halliburton Energy Services, Inc., ("Halliburton Energy") a foreign corporation doing

3

business in the State of Louisiana and within this district.

17. Cameron International Corporation (f/k/a Cooper Cameron Corporation), ("Cameron") a foreign corporation doing business in the State of Louisiana and within this district.

18. M-I, L.L.C. (using the trade name "SWACO" or "M-I SWACO"), ("SWACO") a foreign limited liability company doing business in the State of Louisiana and within this district.

## II.  JURISDICTION AND VENUE

19. This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. §1332(d)(2), as the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and it is a class action brought by citizens of a state different from the state of any defendant; (2) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America, including the laws of the neighboring states which have been declared, pursuant to 43 U.S.C. §§ 1331 (f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer Continental Shelf from which the oil spill originated; (3) 43 U.S.C. § 1332(1), which extends exclusive federal jurisdiction to the Outer Continental Shelf; and (4) 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states and citizens of a state and subjects of a foreign state.

20. Prosecution of this action in this district is proper pursuant to 28 U.S.C. § 1391(a)(2) because all of the events or omissions giving rise to the claims asserted herein occurred in this district.

## III.  FACTS AND GENERAL ALLEGATIONS

21. Transocean, Ltd., Transocean Offshore, Transocean Deepwater, and Transocean Holdings

(collectively "Transocean") are the owners and/or operators of the *Deepwater Horizon*, a semi-submersible mobile drilling rig, which was performing completion operations for BP, BP Products, BP America, BP America Production, and/or BP E&P (collectively "BP Companies") on the Outer Continental Shelf, at the site from which the oil spill originated on April 20, 2010, and has continued spread until the present time and the foreseeable future.

22.     BP Companies, Anadarko E&P, Anadarko Petroleum (collectively "Anadarko"), and MOEX are the owners of a lease granted by the Minerals Management Service ("MMS") which allows them to drill for oil and perform oil production related operations at the site of the oil spill, and on April 20, 2010, did operate the oil well which is the source of the oil spill.  BP Companies is the designated operator of the lease.  BP Companies, Anadarko, and MOEX as lessees, as well as Transocean, are jointly and solidarily responsible for all activities of the *Deepwater Horizon* and for all damages and relief requested herein.

23.     Cameron manufactured and/or supplied the blow-out preventer ("BOP") for the *Deepwater Horizon*, which failed to operate following the explosion on the *Deepwater Horizon*, and which should have prevented the oil spill.  The BOP was defective, as it failed to operate as intended by not stopping the oil spill.  Crews were unable to activate the BOP to stop the oil spill.  As such, Cameron is liable to the Plaintiffs and the Class Members pursuant to the Louisiana Products Liability Act, as well as being liable for negligence.

24.     A study commissioned by the MMS in 2004 singled out Cameron's BOP for relying on calculations to determine the needed strength of certain components of the BOPS in deep water conditions, as opposed to actual testing of the components in deep water conditions, finding Cameron used "shear forces lower than required or desired in many cases."

25.   Halliburton Energy was handling the cementing operations on the *Deepwater Horizon* well and well cap at the time of the explosion which led to the oil spill.  The cementing operations were conducted negligently, increasing the pressure at the well and allowing highly combustible gas to escape from the well and ignite.  Problems with cementing operations were identified as factors in 18 of 39 well blowouts in the Gulf of Mexico from 1992 to 2006.

26.   SWACO was, upon information and belief, contracted to provide drilling fluid ("cement") services to the rig *Deepwater Horizon*.  SWACO, in conjunction with Halliburton Energy, failed to maintain appropriate drilling fluid weight before and during the cementing operations, thus allowing  highly combustible gas to escape from the well and ignite.

27.   At all times material hereto, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered, and/or operated by Transocean and/or BP Companies

28.   The Board of Directors of Transocean, Ltd. eliminated executive bonuses last year in response to the company's woeful safety record, which includes the death of four Transocean workers in 2009.  The Board of Directors took the step of eliminating the bonuses to "underscore the company's commitment to safety" and to give executives an incentive to prevent future accidents. Eleven Transocean workers died in the explosion on the *Deepwater Horizon*.   Transocean, Ltd. has displayed a complete lack of regard for the safety of its workers and the safe and proper operation of its drilling rigs, which has resulted in the oil spill at issue.

29.   The BP Companies have a history of poor safety and maintenance.  At its Texas City, Texas refinery, on March 23, 2005, explosions killed fifteen workers and injured 170, as a result

of hydrocarbon vapors being discharged from refinery components as a result of increases in pressure in the components.  The incident was caused by BP personnel not following procedures, supervisory personnel not being present or doing their jobs, and using out-of-date procedures.  In Prudhoe Bay, Alaska, in March, 2006, BP discharged over 250,000 gallons of crude oil from a corroded pipeline it maintained, shutting down America's largest oil field.  The spill was the largest in Alaska, with the exception of the *Exxon Valdez* disaster, and occurred as a result of BP's lack of maintenance on the pipeline.  Two years prior to the spill, BP had been advised about corrosion problems in its pipes.  In November, 2007, BP was fined $20 million for the discharge pursuant to the Clean Water Act.

30.    The fire and explosion on the *Deepwater Horizon*, its sinking, and the resulting oil spill were caused by the negligence of all Defendants, which renders them liable jointly, severally, and solidarily unto the Plaintiffs and the Class Members for all of their damages.

31.    The injuries and damages suffered by Plaintiffs and the Class Members were caused by the Defendants' violations of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by OSHA and the U.S. Coast Guard, including the requirement to test the sub-sea BOP at regular intervals.

32.    Defendants knew the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to the Plaintiffs, Class Members, Louisiana's and other adjacent States' and the Gulf of Mexico's marine and coastal environments, estuarine areas, and the Coastal Zone, where Plaintiffs and Class Members live, work, and exercise recreational saltwater privileges conferred by their respective States of domicile.

33.    The spilled oil has not and will not evaporate off the surface of the water and is causing

dangerous environmental contamination of the Gulf of Mexico and its shorelines, necessitating an orders from one or more States adjacent to the Gulf of Mexico suspending fishing in the waters and adjacent areas affected by the oil spill. Therefore, the oil spill has caused and will continue to cause the loss for the Plaintiffs and the Class Members of using the Gulf of Mexico and Louisiana territorial waters for activities including the exercise of commercial and recreational saltwater privileges conferred by the various States.

34. In addition, the oil spill has caused and will continue to cause the loss to the Plaintiffs and the Class Members by damaging real property owned or leased by then and/or preventing the personal and/or commercial use of real property located within and/or adjacent to the Gulf of Mexico and Louisiana and/or the other adjacent States' territorial waters.

35. In addition, the oil spill has caused and will continue to cause the loss to the Plaintiffs and the Class Members by exposing them to the hazardous and dangerous components of the crude oil escaping from the well and causing serious personal and emotional injuries to the Plaintiffs.

36. There are many other potential effects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Class Action Complaint once additional information becomes available.

## IV. <u>CLASS ACTION ALLEGATIONS</u>

37. Plaintiffs bring this class action pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(1),and 23(b)(3) on behalf of themselves and all others similarly situated. The proposed Class is defined as follows:

All persons or entities who have incurred, or will incur, economic loss, property damage or personal injury as a result of the April 20, 2010 explosion and fire aboard the Deepwater Horizon and the oil spill and release following same.

Plaintiffs submit this proposed class definition is subject to further refinement and stratification through the application of Fed. R. Civ. P. 23(c)(4) and (5).

38.     Plaintiffs propose that the above class be divided into subclasses pursuant to Fed. R. Civ. P. 23(c)(5) as follows:

a.      Frederick Bass brings this action on behalf of themselves and all other similarly-situated, who are members of the following Commercial Fisherman Subclass:

All Gulf Coast residents who live or work as commercial fishermen in, or derive income from the"Coastal Zone," of one or more of the several Gulf Coast States, as that term is defined in 43 U.S.C. § 1331(e), and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 explosion and fire aboard the Deepwater Horizon and the oil spill and release following same.

b.      Plaintiff, Michael Hayes, as the owner of Hayes Seafood & Produce Markets Inc., brings this action on behalf of himself and all other similarly situated, who are members of the following Business Owner Subclass:

All Gulf Coast residents who own businesses in, or derive income from the"Coastal Zone," of one or more of the several Gulf Coast States, as that term is defined in 43 U.S.C. § 1331(e), and who have sustained any legally cognizable loss and/or damages  as a result of the April 20, 2010 explosion and fire aboard the Deepwater Horizon and the oil spill and release following same.

c.      Plaintiff, Darryl Eckert, brings this action on behalf of himself and all other similarly situated, who are members of the following Recreational Fisherman Subclass:

All Gulf Coast residents who possess a valid recreational saltwater fishing, trawling, crabbing, and/or other saltate recreational license issued by one of the several Gulf Coast States within the "Coastal Zone," as that term is defined in 43 U.S.C. § 1331(e), and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 explosion and fire aboard the Deepwater Horizon and the oil spill and release following same.

            d.      Plaintiffs, Charles C. Elmer and Lena T. Nunez, bring this action on behalf of themselves and all other similarly situated, who are members of the following Real Property Owners and/or Lessors Subclass:

All Gulf Coast residents who own and/or lease real property in one of the several Gulf Coast States along the "Coastal Zone," as that term is defined in 43 U.S.C. § 1331(e), and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 explosion and fire aboard the Deepwater Horizon and the oil spill and release following same.

            e.      Plaintiff, Rodney Neumeyer, Jr., brings this action on behalf of himself and all other similarly situated, who are members of the following Personal Injury Subclass:

All Gulf Coast residents who reside in one of the several Gulf Coast States along the "Coastal Zone," as that term is defined in 43 U.S.C. § 1331(e), and who have sustained any legally personal and emotional injuries and damages as a result of the April 20, 2010 explosion and fire aboard the Deepwater Horizon and the oil spill and release following same.

39.      Excluded from the Class are Defendants, members of the immediate families or employees of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which Defendants have a controlling interest or which is related to or affiliated with the Defendants, and the legal representatives, agents, heirs, successors-in-interest or assigns

of any such excluded party.

40.   Named Plaintiffs herein recognize that not all claims asserted herein may be susceptible to class certification treatment under Fed. R. Civ. P. 23, *e.g*, certain elements appertaining to personal injury causes of action.  However, there are several issues relative to all claims being asserted by Plaintiffs, individually and class-wide, which are amenable to class action certification under Subdivision (c)(4). Under Rule 23, this provision recognizes that an action may be maintained as a class action as to particular issues only, for example, the adjudication of certain liability issues common to the claims being asserted by all Plaintiffs may most efficiently and expeditiously be determined through a class.  Thereafter, the members of the class may be required to come in individually and prove the amounts of their respective claims.

41.   Pursuant to Rule 23(c)(5), multiple sub-classes may be represented in a single action. The Advisory Committee Notes For Rule 23 states that one reason for subclass certification includes divergent or conflicting interests among the class members.  However, the Advisory Committee Notes should not be construed to indicate an intent to limit subclass formation to this ground. William B. Rubenstein, Alba Conte and Herbert B. Newberg, 3 NEWBERG ON CLASS ACTIONS, § 8:12 (4th ed.).

42.   The membership of the proposed Class and/or its proposed subclasses are so numerous, and its members so geographically dispersed, that joinder of all members would be impracticable. Given available evidence of the size of the areas which are likely to be impacted by the Oil Spill, numerosity is satisfied here.

43.   There is a well-defined community of interest in that the questions of law and fact common

11

to the Class and/or subclasses which predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a.  Whether Defendants owed a duty of care to Plaintiffs to ensure the safe functioning of the *Deepwater Horizon* and its equipment;

b.  Whether Defendants knew or should have known of the risk of fire, explosion, or spill presented by the *Deepwater Horizon* and its equipment;

c.  Whether Defendants' failure to use reasonable care caused the fire, explosion, oil spill, and Plaintiffs' resulting damages;

d.  Whether Defendants caused and/or contributed to the fire, explosion and oil spill;

e.  Whether Defendants' actions were negligent;

f.  Whether Defendants' conduct constitutes an abnormally dangerous activity;

g.  Whether the fire, explosion and oil spill have caused environmental or other damage;

h.  Whether Plaintiffs are entitled to damages pursuant to the claims alleged herein;

i.  The amount of damages the Class and or subclass members should receive in compensation; and,

j.  The amount of damages the Class and or subclass members should receive in punitive or exemplary damages.

44.  Plaintiffs and the Class and/or subclass members have suffered similar harm as a result of Defendants actions.

45.  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and/or subclasses because their interests do not conflict with the interests of the Class and/or subclass members they seek to represent.

46.    Plaintiffs, the Class and/or subclass members are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation, maritime and environmental litigation, and who may be expected to handle this action in an expeditious and economic manner in the best interest of all members of the Class and/or subclasses.

47.    The class action procedural device affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the Class and/or subclass members is impracticable.  Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs, would be unduly burdensome and expensive to the court system as well as the defendants.

48.    The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a.    The prosecution of separate actions by thousands of individual Class and/or subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants;

b.    The prosecution of separate actions by individual Class and/or subclass members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests; and,

c.    The questions of law or fact common to the Members of the Class and/or subclass members predominate over any questions affecting only individual Members, and

13

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

49. Rule 23(b)(3) classes require that "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." When a court decides to limit a class action with respect to particular common issues only pursuant to under Rule 23(c)(4), it follows that the predominance test of Rule 23(b)(3) must be read with a recognition of the power of the court to uphold a class with respect to particular issues under Rule 23(c)(4). *See* William B. Rubenstein, Alba Conte and Herbert B. Newberg, 2 NEWBERG ON CLASS ACTIONS, § 4:23 (4th ed.).   In this case there are, as set forth herein, several predominant issues common to all Plaintiffs, individually and/or as Class members, which should be determined unitarily in one judicially efficient proceeding.

## V.  CLAIMS ASSERTED AGAINST THE DEFENDANTS

### COUNT 1:

### NEGLIGENCE AND GROSS NEGLIGENCE

50. Plaintiffs and Putative Class and/or subclass members incorporate the above allegations as if fully repeated verbatim herein.

51. Defendants owed a duty of care to Plaintiffs to ensure the safe operation of the *Deepwater Horizon*, and to avoid the fire, explosion, and spill that occurred on April 20, 2010.

52. Defendants knew or should have known that the *Deepwater Horizon* presented a serious risk of fire, explosion, and spill into surrounding waters, which could, in turn, would cause harm to persons, property, and the natural environment.

14

53.    Defendants knew or should have known that certain equipment utilized by the *Deepwater Horizon* was defective or not properly functioning.

54.    Defendants knew or should have known that the cement used in the cementing of the well head was defective and/or that the cementing of the well head was not done properly.

55.    Defendants knew or should have known that significant amounts of petroleum were leaking from the *Deepwater Horizon* immediately following the April 20, 2010 fire and explosion.

56.    The Defendants owed a duty to Plaintiffs and the Class and/or subclass members to refrain from action that causes damage to the natural resources, wetlands, waters, commercial fisheries, and wildlife of Louisiana, and other Gulf Coastal States that Plaintiffs use, enjoy, and from which Plaintiffs derive economic and aesthetic benefits.

57.    The incidents described above that caused damage to Plaintiffs and the Class and/or subclass members were a proximate result of the negligence, fault, gross negligence, and/or willful misconduct of Defendants through their agents, servants and employees, which are more particularly described as follows:

    a.    Failure to properly inspect and monitor the *Deepwater Horizon* and its equipment;

    b.    Failure to properly and safely maintain the *Deepwater Horizon* and its equipment;

    c.    Failure to properly and safely operate the *Deepwater Horizon* and its equipment;

    d.    Failure to take adequate precautionary measures to prevent fire, explosion, and oil spills;

    e.    Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

    f.    Acting in a careless and negligent manner without due regard for the safety of others;

15

g.  Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the *Deepwater Horizon* which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

h.  Operating the *Deepwater Horizon* with untrained and unlicensed personnel;

i.  Inadequate and negligent training and hiring of personnel;

j.  Failing to take appropriate action to avoid or mitigate the accident;

k.  Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

l.  Employing untrained or poorly trained employees and failing to properly train their employees;

m.  Failing to ascertain that the *Deepwater Horizon* and its equipment were free from defects and/or in proper working order;

n.  Failure to timely warn;

o.  Failure to timely bring the oil release under control;

p.  Failure to provide appropriate accident prevention equipment;

q.  Failure to observe and read gauges that would have indicated excessive pressures in the well;

r.  Failure to react to danger signs;

s.  Providing a blowout valve or blowout preventer that did not work properly;

t.  Failure to properly design, manufacture, and install the blowout valve or blowout preventer;

16

u.  Failure to employ an acoustic switch in the blowout valve or blowout preventer;

v.  Failure to ensure that the blowout valve or blowout preventer was functioning properly and as intended;

w.  Failure to ensure that the concrete casing was sufficient for sealing the well;

x.  Failure to properly cement the well head and final production casing string;

y.  Conducting well and well cap cementing operations improperly;

z.  Failing to provide all reasonable cooperation and assistance requested by the responsible officials in connection with the clean-up and removal activities;

aa.  Failure to properly report and/or maintain records, and/or the intentional manipulation and fabrication of equipment inspections, including crew inspections, was a substantial contributing factor to the explosion and resulting damages;

bb.  Acting in a manner that justifies imposition of punitive damages; and,

cc.  Such other acts of negligence and omissions as will be shown at the trial of this matter, all of which acts are in violation of the laws of Louisiana, other Gulf Coastal States, and Federal law applicable on the outer Continental Shelf.

58.  Defendants had a duty to conform their conduct in such a manner as to assure that a fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, would not occur, pursuant to federal, Louisiana law, and the laws of the other affected Gulf Coastal States.

59.  Defendants failed to conform their conduct to the appropriate legal standard, thereby breaching their duty to conform their conduct in such a manner as to assure that a fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, would not occur

17

pursuant to federal, Louisiana law, and the laws of the other affected Gulf Coastal States.

60. Defendants substandard conduct in failing to prevent the fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, pursuant to federal, Louisiana law, and the laws of the other affected Gulf Coastal States., was the cause-in-fact of the injuries, harm, and damages suffered by the Plaintiffs and the Class and/or subclass members.

61. As a direct and proximate result of Defendants' negligent conduct, Defendants have caused or will cause Plaintiffs to suffer and continue to suffer financial and economic loss, personal and emotional injuries, and other damages allowed under the applicable laws/statutes.

62. In addition, and in the alternative, the fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, were caused by defective equipment, including the blowout valve or blowout preventer, which were in the care, custody, and control of Defendants and over which the Defendants had *garde*. Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

63. The injuries to Plaintiffs and the Class and/or subclass members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

64. It was foreseeable that the conduct and/or omissions taken by the Defendants, resulting in the fire, explosion and sinking of the Deepwater Horizon, and resulting oil spill, would proximately cause the damage, injury, and harm complained of to individuals situated like the Plaintiffs and the Class and/or subclass members., as defined above.

65. Defendants were aware at all times relevant hereto that their operations and the acts and/or omissions described above created an unreasonable risk of harm and knew that catastrophic

18

environmental destruction and economic loss would occur if the well being serviced by the *Deepwater Horizon* were to blow out. Defendants were indifferent to this risk of harm. Defendants intentionally failed to perform the duties owed to Plaintiffs in reckless disregard of the consequences their actions and/or omissions would have on Plaintiffs. Moreover, Defendants acted intentionally with knowledge that their acts would probably result in injury or in such a way as to allow an inference of a reckless disregard of the probable consequences of their acts. Therefore, Defendants are also liable to Plaintiffs for gross negligence and/or willful misconduct. The oil spill that is damaging Coastal Zone and the Gulf of Mexico off the coast of Louisiana, and other proximal States was proximately caused by Defendants' gross negligence and/or willful misconduct.

66. Further, upon information and belief, the oil spill was proximately caused by the Defendants' violation of applicable federal safety, construction, or operating regulations and/or by violations of such regulations by an agent or employee of the Defendants and/or a person acting pursuant to a contractual relationship with Defendants.

67. In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs and the Class and/or subclass members, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants. Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them and, therefore, Plaintiffs plead the evidentiary doctrine of *res ipsa loquitur.*

68.     As a direct and proximate result of the Defendants' acts and/or omissions set forth above, the natural resources, water, wetlands, commercial fisheries, and wildlife of coastal Louisiana, and other Gulf Coastal States along the Gulf of Mexico have been, and will continue to be, damaged by the intrusion of oil into the Gulf Coastal Zone States and the Gulf of Mexico. As a result, Plaintiffs and  the Class and/or subclass members have suffered a loss of their right to use, enjoy, and derive economic and aesthetic benefits from the natural resources, wetlands, waters, commercial fisheries, and wildlife of Louisiana, and other affected Gulf Coastal States. Further, Plaintiffs and the Class and/or subclass members have suffered a loss of their right and ability to fish, shrimp, and harvest oysters commercially or recreationally. Plaintiffs and  the Class and/or subclass members will continue to be prevented from engaging in their commercial and recreational fishing operations as a result of the toxic effects of the discharged oil on the flora and fauna of the Louisiana, and other affected Gulf Coastal Zone States, the surrounding waters and wetlands, and Gulf of Mexico. As a direct and proximate result of the Defendants' negligence, Plaintiffs and the Class Members have suffered and will continue to suffer loss of income, property damage and loss, other economic loss, physical injury and emotional distress.  The Defendants are liable jointly and solidarily for Plaintiffs' damages resulting from Defendants' negligence.

69.     Plaintiffs and the Class and/or subclass members are entitled to a judgment finding Defendants liable to Plaintiffs the Class and/or subclass members for damages suffered as a result of Defendants' negligence and awarding Plaintiffs and the Class and/or subclass members adequate compensation therefore in amounts determined by the trier of fact.

## COUNT 2:

## STRICT LIABILITY

70.     Plaintiffs and Putative Class and/or subclass members incorporate the above allegations as if fully repeated verbatim herein.

71.     Defendants' drilling of highly volatile and toxic fuel constitutes an abnormally or ultra-hazardous activity.

72.     Defendants' drilling of highly volatile and toxic fuel within a relatively short distance from the shoreline inherently presents a high degree of risk and likelihood of substantial harm to persons, land, and property.

73.     Due to the nature of Defendants' activity, the associated high risks could not have been eliminated through the exercise of reasonable care.

## COUNT 3:

## PRODUCTS LIABILITY

74.     Plaintiffs and Putative Class and/or subclass members incorporate the above allegations as if fully repeated verbatim herein.

75.     The blowout valve(s) and/or blowout preventer that were/was  in place at the *Deepwater Horizon* were manufactured by defendant Cameron and deviated in material ways from the manufacturer's specifications such that they/it were unreasonably dangerous in construction and composition.

76.     Cameron is therefore liable unto Plaintiffs and the Class and/or subclass members for all of their damages, including compensatory damages.

77.     The blowout valve(s) and/or blowout preventer that were/was  in place at the *Deepwater*

*Horizon* and manufactured by Cameron were/was unreasonably dangerous in design at the time they/it left Cameron's control. There existed alternative designs for the blowout valve(s) and/or blowout preventer that would have prevented the explosion and Plaintiffs' resulting damages, but which were not used by Cameron even though using the alternative designs would have outweighed Cameron's burden of adopting such alternative designs.

78.    Cameron is therefore liable unto Plaintiffs and the Class and/or subclass members for all of their damages, including compensatory damages.

79.    The blowout valve(s) and/or blowout preventer that were/was  in place at the *Deepwater Horizon* and manufactured by Cameron were/was unreasonably dangerous because Cameron failed to provide adequate warnings.

80.    Cameron is therefore liable unto Plaintiffs and the Class and/or subclass members for all of their damages, including compensatory damages.

81.    The blowout valve(s) and/or blowout preventer that were/was  in place at the *Deepwater Horizon* and manufactured by Cameron were/was unreasonably dangerous because they failed to comply with an express warranty which induced the Defendants to use the product and Plaintiffs' and the Class and/or subclass members' damages were proximately caused because the express warranty was untrue.

82.    Cameron is therefore liable unto Plaintiffs and the Class and/or subclass members for all of their damages, including compensatory damages.

## COUNT 4:

## PRIVATE NUISANCE

83.    Plaintiffs and Putative Class and/or subclass members incorporate the above allegations as

if fully repeated verbatim herein.

84. Defendants' acts and omissions with respect to the explosions, fire and release of crude oil and toxic substances have caused and continue to cause a material, substantial and unreasonable interference with Plaintiffs' and Class and/or subclass members' use and enjoyment of their properties and businesses, and have materially diminished and continue to diminish the value thereof.

85. Defendants' material, substantial, and unreasonable interference with the use and enjoyment of Plaintiffs' and Class and/or subclass members' properties and businesses, and the continuing material, substantial and unreasonable interference with such use and enjoyment constitute a continuing private nuisance.

86. Defendants' creation and continuing creation of private nuisance proximately caused and continues to proximately cause damage to Plaintiffs and Class and/or subclass members in the form of emotional distress, and property damage.

## COUNT 5:

## PUBLIC NUISANCE

87. Plaintiffs and Putative Class and/or subclass members incorporate the above allegations as if fully repeated verbatim herein.

88. Defendants have created a public nuisance through the discharge of oil into the Gulf of Mexico by unreasonably interfering with the use by the public of a public place and public waters and have endangered or injured the property of a considerable number of persons in the State of Louisiana, and the Gulf Coastal States. Plaintiffs and Class and/or subclass members who derive their livelihoods income from the impacted areas in the

Gulf Coastal Zone have suffered harm of a kind different from that suffered by other

members of the public exercising the right common to the general public that was the

subject of the interference. Defendants are jointly and solidarily liable to Plaintiffs and the

Class Members for creating a public nuisance and the resulting harm and are therefore

liable for compensatory damages.

### COUNT 6:

### BREACH OF CONRACT: La. Civil Code art. 1978

89.    Plaintiffs and Putative Class and/or subclass members incorporate the above allegations

    as if fully repeated verbatim herein.

90.    Upon information and belief, the lease (and other agreements) granted by the Minerals

    Management Service to Defendants BP America Production, Anadarko E&P, Anadarko

    Petroleum, and MOEX("Lessee Defendants") contain implied and/or express provisions

    that (1) make the Lessee Defendants responsible for all oil spill removal costs and

    damages that occur during the term of the lease and (2) require the Lessee Defendants to

    maintain all operations within the leased area in compliance with regulations or orders

    intended to protect persons, property, and the environment on the Outer Continental

    Shelf, including Louisiana Plaintiffs. Louisiana Plaintiffs are, therefore, third-party

    beneficiaries to these lease provisions pursuant to La. Civil Code art. 1978.

91.    The oil spill occurred while the Lessee Defendants and/or entities under their control

    were performing drilling operations pursuant to their lease granted by the Minerals

    Management Service.

92.    The Lessee Defendants failed to maintain their operations in compliance with regulations

and orders intended to protect persons, property, and the environment on the Outer Continental Shelf and are liable for all oil-spill removal costs and damages that have resulted.

93.    As a direct and proximate result of the Defendants' breach of lease, the natural resources, water, wetlands, commercial fisheries, and wildlife of coastal Louisiana, and the Gulf of Mexico off the coast of Louisiana have been, and will continue to be, damaged by the intrusion of oil into Louisiana's Coastal Zone and the Gulf of Mexico. As a result, Louisiana Plaintiffs and Class members have suffered a loss of their right to use, enjoy, and derive economic and aesthetic benefits from the natural resources, wetlands, waters, commercial fisheries, and wildlife of Louisiana. Further, Louisiana Plaintiffs and  Class members have suffered a loss of their right and ability to fish, shrimp, and harvest oysters commercially. Louisiana Plaintiffs and Class members will continue to be prevented from engaging in their commercial and recreational fishing operations as a result of the toxic effects of the discharged oil on the flora and fauna of the Louisiana Coastal Zone, the surrounding waters and wetlands, and Gulf of Mexico. As a direct and proximate result of the Defendants' breach of lease, Louisiana Plaintiffs and Class members have suffered and will continue to suffer loss of income, other economic loss, and emotional distress. The Defendants are liable jointly and solidarily for Louisianan Plaintiffs' damages resulting from Defendants' breach of lease.

94.    As third-party beneficiaries, Louisiana Plaintiffs and Class members are therefore entitled to demand the compensatory damages as a result of the Lessee Defendants' breach.

## COUNT 7:

## PUNITIVE DAMAGES

95. Plaintiffs and Putative Class and/or subclass members incorporate the above allegations as if fully repeated verbatim herein.

96. By virtue of the Defendants' callous and willful disregard for safety procedures following aboard, and the conditions of, the *Deepwater Horizon*, which unsafe practices and/or conditions were actually or constructively known to Defendants, Plaintiffs and Class and/or subclass members are entitled to punitive damages under the General Maritime Law, in an amount to be determined as necessary to punish Defendants as well as deter such misconduct in the future.

## COUNT 8:

## OIL POLLUTION ACT

97. Plaintiffs and Putative Class and/or subclass members incorporate the above allegations as if fully repeated verbatim herein.

98. Plaintiffs and Putative Class and/or subclass members are those who have or will have exhausted all administrative remedies under the Oil Pollution Act, 33 U.S.C. §2713.

99. The Oil Pollution Act ("OPA") imposes liability upon a "responsible party for a … facility from which oil is discharged … into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. § 2702.

100. Section 2702(b)(2)(C) of the OPA provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimants who so uses natural resources which have been injured, destroyed, or lost, without regard to the

26

ownership or management of the resources."

101.   The Coast Guard already has named Defendant BP as a responsible party. Therefore, BP

already is liable pursuant to Section 2702 of the OPA for all damages that result from the

oil spill.

102.   As a result of the oil spill, Plaintiffs and Class and/or subclass members have not been

able to use the natural resources for their subsistence, and they are entitled to recover

form BP for such damages in amounts to be determined by the trier of fact.

103.   Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits

or impairment of earning capacity due to the injury, destruction, or loss of real property,

personal property, or natural resources, which shall be recoverable by any claimant."

104.   As a result of the oil spill, Plaintiffs and Class and/or subclass members have suffered the

type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they

demand compensation therefore from BP in amounts to be determined by the trier of fact.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Class and/or subclass members demand judgment against

Defendants, jointly, severally and *in solido*, as follows:

a.      An order certifying the Class and/or any of its proposed subclasses for the

purpose of going forward with any one or all of the causes of action alleged

herein; appointing Plaintiffs as Class Representatives; and, appointing

undersigned counsel as counsel for the Class;

b.      Economic and compensatory damages in amounts to be determined at trial, but

27

not less than the $5,000,000.00 required by the Class Action Fairness Act which

establishes one of this Court's bases of jurisdiction to hear this case;

c.      Punitive damages;

d.      Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.      Attorney' s fees and costs of litigation;

f.      Such other and further relief available under all applicable state and federal laws

and any relief the Court deems just and appropriate; and,

g.      A trial by jury as to all Defendants.

Respectfully submitted,

LAW OFFICES OF SIDNEY D. TORRES, III
*A PROFESSIONAL LAW CORPORATION*

BY:     s/ SIDNEY D. TORRES, III
        SIDNEY D. TORRES, III, Bar No. 12869
        ROBERTA L. BURNS, Bar No. 14945
        DAVID C. JARRELL, Bar No. 30907
        8301 W. Judge Perez Drive
        Suite 303
        Chalmette, Louisiana  70043
        Telephone: (504) 271-8422
        Electronic Mail:      storres@torres-law.com
                              rburns@torres-law.com


And

GAINSBURGH, BENJAMIN, DAVID, MEUNIER
& WARSHAUER, L.L.C.

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        IRVING J. WARSHAUER, #13252
        STEVAN C. DITTMAN, #16888
        MICHAEL J. ECUYER, #23050

JUSTIN I. WOODS, #24713
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:     504/528-9973
Electronic Mail:       gmeunier@gainsben.com

And

THE BUZBEE LAW FIRM

BY:     _s/_ Anthony G. Buzbee
        Anthony G. Buzbee
        State Bar No. 24001820
        JPMorgan Chase Tower
        600 Travis, Suite 7300
        Houston, Texas 77002
        Telephone: 713-223-5393
        Facsimile: 713-223-5909
        Email: tbuzbee@txattorneys.com

                And

LEGER & SHAW

BY:     s/ Walter J. Leger, Jr.
        WALTER J. LEGER, JR. (La. Bar No. 8278),
        600 Carondelet St., 9th Floor
        New Orleans, Louisiana 70130
        Telephone: (504) 588-9043
        Electronic mail:       wleger@legershaw.com

29